UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RICKY GRIFFIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:21-cv-00038-TWP-TAB |
| | ) |
| WENDY KNIGHT, | ) |
| FOX Major, | ) |
| COATES Lt., | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment, (Dkt. 43), filed by the Defendants Wendy Knight, Major Fox, and Lieutenant Coates (collectively "the Defendants"). Plaintiff Ricky Griffin ("Griffin") initiated this action alleging violation of his Eighth Amendment Rights when he was subjected to unconstitutional conditions of confinement that resulted in him contracting COVID-19. For the reasons explained below, the Defendants' Motion is **granted**.

**I.   FACTUAL BACKGROUND**

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). The Court observes that, with the exception of a copy of the declaration declaring a health emergency (*See* Dkt. 43-1), the Defendants' statement of facts is derived solely from Griffin's unverified Complaint.

At all times relevant to his Complaint, Griffin was a prisoner in the custody of the Indiana Department of Correction, and was housed in the D-dorm at the Correctional Industrial Facility

("CIF"). (Dkt. 1 at 3.) Defendants were employed at CIF. *Id.* at 3-4. On March 11, 2020, the World Health Organization declared the novel coronavirus (COVID-19) outbreak a global pandemic.[1] At all times relevant to Griffin's Complaint, public health emergency declaration for the COVID-19 outbreak was in effect in the state of Indiana. (Dkt. 43-1.)

On November 10, 2020, two Aramark employees who worked in CIF's kitchen tested positive for COVID-19. *Id.* at 4. Defendants took no action to quarantine the inmates who worked with the Aramark employees. *Id.* at 5. On or about November 13, 2020, three inmates who had been in contact with the Aramark employees developed COVID-19 symptoms. *Id.* The three inmates, all residents of D-dorm, were placed in quarantine the following day. *Id.*

On November 18, 2020, Defendants decided to sanitize D-dorm due to confirmed COVID-19 cases of residents in D-dorm. *Id*. Defendants ordered Griffin and the other 126 inmates from his housing unit to be moved into a dining room to allow for the cleaning to take place. *Id.* at 6. Defendants did not contact Wexford, the company in charge of healthcare for inmates at that time, or the Indiana State Department of Health, to screen the inmates before moving them into this room. *Id.* at 5. Defendants were aware that the inmates would not be able to socially distance in the 1,400 square foot room, and that Center for Disease Control and Prevention ("CDC") guidelines at that time required that large gatherings in one room have no more than 25 people.[2] *Id.* at 6. While the inmates were in the dining room, one of them became sick and was taken to the medical department. *Id*. Later, it was confirmed that the inmate was sick with COVID-19. Several inmates (including Griffin) were kept in the dining room for nearly six hours until the

---

[1] *See* Centers for Disease Control and Prevention, "CDC Museum COVID-19 Timeline," https://www.cdc.gov/museum/timeline/covid19.html (last visited Jan. 13, 2022).

[2] The Court accepts this statement as true for purposes of summary judgment without confirming that this was the relevant CDC guidance with respect to group gatherings in November 2020.

cleaning was completed, and Griffin and the other D-dorm residents were then taken back to their housing unit. *Id.* at 7.

On November 19, 2020, Griffin began to experience COVID-19 symptoms. *Id*. He consulted with a nurse who recommended he take ibuprofen and drink lots of water. *Id*. Griffin suffered from fever, body pain, chest pain, vision problems, loss of taste and smell, muscle weakness, and headaches. *Id*. He filed this action on January 6, 2021 seeking damages for Defendants violations of his constitutional rights.

## II.  STANDARD OF REVIEW

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id*.

When reviewing a motion for summary judgment, the court views the record and draws all reasonable inferences from it in the light most favorable to the non-moving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour

every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

### III. DISCUSSION

Griffin is proceeding on Eighth Amendment conditions-of-confinement and state law negligence claims. The Court will first address the Eighth Amendment claim before turning got the state law claim.

**A.   Eighth Amendment Claim**

Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). Under the objective component, a prisoner must show that the conditions were objectively serious and created "an excessive risk to his health and safety." *Id.* (cleaned up). Under the subjective component, a prisoner must establish that the defendants had a culpable state of mind, *i.e.*, that they "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720. Proving the subjective component is a "high hurdle" that "requires something approaching a total unconcern for the prisoner's welfare in the face of serious

4

risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations omitted). Neither "negligence [n]or even gross negligence is enough[.]" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

   1. **<u>Analysis</u>**

A jury could find that placing Griffin in close quarters in a dining room with a group of inmates where they could not socially distance posed a substantial risk of harm to his health, satisfying the objective prong of the deliberate indifference analysis. *See Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (finding that the transmissibility of COVID-19 combined with a prison's dormitory-style housing presented a substantial risk that prisoners "will be infected with COVID-19 and have serious health effects as a result[.]").

The subjective prong is a closer call. In assessing the subjective prong, the question is whether the defendant "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. The record reflects that some steps were taken to protect inmates from contracting COVID-19. The inmates with positive tests were quarantined from the other inmates in D-dorm. The reason Griffin was moved to the dining hall with the other inmates was to provide prison staff with the ability to thoroughly clean the dorm due to these positive cases. Because the prison staff was trying to slow the spread of the virus in D-dorm by cleaning it, it is difficult to say that their decision to move the inmates to the dining hall during that cleaning "approached a total unconcern" for their welfare. *Donald*, 982 F.3d at 458. Instead, it seems that this ill-advised act was closer to negligence. *See Swain v. Junior*, 958 F.3d 1081, 1089 (11th Cir. 2020) (vacating preliminary injunction because the inability to implement social distancing measures at a prison was merely "the inability to take a positive action," which "does not constitute a state of mind more blameworthy than negligence") (cleaned up). Further, while the CDC

guidelines can be considered when analyzing inmates' conditions claims, they "do not themselves set a constitutional standard." *Mays v. Dart*, 974 F.3d 810, 823−24 (7th Cir. 2020).

Also, courts have consistently afforded prison officials more leeway with respect to social distancing efforts due to security needs and the physical constraints of the facilities. *See id.*; *Hope v. Warden York Co. Prison*, 972 F.3d 310, 330 (3rd Cir. 2020) (citing CDC, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, which provided that social distancing "strategies will need to be tailored to the individual space in the facility and the needs of the residents and staff."); and *Mays*, 974 F.3d at 821 (vacating portion of preliminary injunction which prohibited double-celling in the Cook County Jail during COVID-19 because courts must defer to prison officials for housing decisions).

The problem here is that Defendants—by relying on Griffin's Complaint and submitting no evidence of their own—have failed to describe any other affirmative steps they took to protect inmates from contracting COVID-19. Where prisoners' COVID-19 claims have been defeated on the subjective prong of the deliberate indifference inquiry, it was because prison officials had responded reasonably to the virus through a variety of protective measures. *See Wilson*, 961 F.3d at 841 (protective measures included screening, quarantining sick inmates, limiting group gatherings, screening inmates and staff, enhanced cleaning measures, and providing masks to inmates); *Valentine v. Collier*, 956 F.3d 797, 802 (5th Cir. 2020) (listing similar measures); and *Swain*, 958 F.3d at 1090 (listing similar measures). There is no information in the record with respect to whether the inmates had clean masks while they were in the dining hall, or whether there were alternative spaces in the dining hall where the inmates could have been able to socially distance while they waited (such as the recreation yard). Given the undeveloped factual record in

this regard, the Court concludes that there are material disputes of fact with respect to the subjective prong as well.

### 2. Qualified Immunity

Because there are disputed issues of material fact, the Court proceeds to Defendants' qualified immunity defense. "Qualified immunity is a doctrine that protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019) (cleaned up). Once a defendant raises qualified immunity as a defense, the burden shifts to the plaintiff to defeat it by showing "two elements: first, that the facts show a violation of a constitutional right, and second, that the constitutional right was clearly established at the time of the alleged violation." *Id.* (cleaned up). "'If *either* inquiry is answered in the negative, the defendant official' is protected by qualified immunity." *Koh v. Ustich*, 933 F.3d 836, 844 (7th Cir. 2019) (quoting *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (emphasis in original)).

The Court finds the second element dispositive. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. . . . Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 11−12 (2015) (cleaned up). Courts cannot define "clearly established law at a high level of generality" but rather must assess "whether the violative nature of *particular* conduct is clearly established." *Id.* (cleaned up). The

doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments[.]" *Carroll v. Carman*, 574 U.S. 13, 17 (2014).

It is clearly established that prison officials may not "be deliberately indifferent to the exposure of inmates to a serious, communicable disease" under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 33 (1993). And although COVID-19 was a new virus, the duty to protect inmates from needless exposure "need not be litigated and then established disease by disease [.]" *Estate of Clark v. Walker*, 865 F.3d 544, 553 (7th Cir. 2017). But the issue is whether the Defendants were on notice that their particular conduct—putting over 100 inmates in a dining hall where they could not socially distance so that their dorm could be deep-cleaned—was a violation of Griffin's Eighth Amendment rights. Griffin has cited no case that suggests as much, and the Court can find none. *See, e.g., Jones v. Burt*, Case No. 1:21-cv-41, 2022 WL 4244298, *5 (W.D. Mich. July 15, 2022) (granting qualified immunity on claim related to failure to social distance because "[n]o court has found that the inability of prison officials to ensure social distancing occurs during the COVID-19 pandemic, standing by itself, and in light of other measures . . . such as . . . setting up isolation areas for known COVID-positive prisoners, violates the Eighth Amendment."); *Brewer v. Dauphin County Prison*, Case No. 1:21-cv-1291, 2022 WL 16858014, *9−11 (M.D. Penn., June 29, 2022) (granting motion to dismiss incarcerated prisoner's Eighth Amendment claim finding that he failed to demonstrate an Eighth Amendment violation

on the basis of lack of social distancing and, in the alternative, defendants were entitled to qualified immunity). Accordingly, the Court concludes that Defendants are entitled to qualified immunity.

Because Defendants are entitled to qualified immunity, summary judgment is **granted** as to the Eighth Amendment claim against them.

### 3. State Law Negligence Claims

Defendants argue that Griffin's state law negligence claims are barred by the Indiana Tort Claims Act ("ITCA") for several reasons: (1) Griffin did not comply with the notice requirements; (2) Defendants' actions were within the scope of their employment; and (3) Defendants are immune because his claims arose during a period of state disaster emergency. The Court finds the first argument dispositive and declines to address the other two.

Pursuant to the ITCA, "a claim against the state is barred unless notice is filed with the attorney general or the state agency involved within two hundred seventy (270) days after the loss occurs." Ind. Code § 34-13-3-6(a). This requirement also applies to suits against a state employee. *Thomas v. Starks*, 159 F. App'x 716, 718 (7th Cir. 2005) ("Indiana law requires that a party injured by a government employee must give the employing entity or the attorney general notice of tort claims within 270 days of the loss or else the suit will be barred, even against the employee in his individual capacity."). Not only must Griffin have timely complied with the notice requirements, but his notice must have been denied before he brought suit. Ind. Code § 34-13-3-13.

Defendants raised in their answer the affirmative defense of Griffin's failure to comply with the notice requirement. (Dkt. 20 at 2.) "Once a defendant raises an issue of noncompliance [with the ITCA], the burden shifts to the plaintiff to prove compliance." *Gibson v. Carrington*, No. 1:20-cv-02812-SEB-DLP, 2021 WL 1667036, at *2 (S.D. Ind. Apr. 27, 2021) (citing *Brown v. Alexander*, 876 N.E.2d 376, 384 (Ind. Ct. App. 2007)). Griffin did not produce evidence to show

that he complied with these requirements. (Dkt. 46.) Accordingly, summary judgment is **granted** to Defendants on Griffin's state negligence claims.

## IV.  CONCLUSION

For these reasons, Defendants' Motion for Summary Judgment, Dkt. [43], is **GRANTED**. Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 1/31/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Ricky Griffin, #196658
PENDLETON - CORRECTIONAL INDUSTRIAL FACILITY
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 West Reformatory Road
Pendleton, Indiana  46064

Samantha Sanghera
OFFICE OF THE INDIANA ATTORNEY GENERAL
Samantha.sanghera@atg.in.gov